## MORRISON STATE BANK v. MICHAEL et al.

No. 4950.    Opinion Filed December 21, 1915.

(153 Pac. 1114.)

**BANKS AND BANKING—Contract to Pay Interest—Validity.** It is contrary to the public policy of the state for the officers of a bank organized under the laws of the state to pay, or agree to pay, 10 per cent. per annum interest on deposits in said bank, and because thereof, a contract entered into by the officers of such a bank to pay such a rate of interest on deposits is void, in so far as it relates to the payment of such rate of interest.

(Syllabus by Robberts, C.)

*Error from District Court, Noble County;*
*W. M. Bowles, Judge.*

Action by Ettie Michael against the Morrison State Bank and others. Judgment for plaintiff, and the defendant named brings error. Modified and affirmed.

*H. E. St. Clair,* for plaintiff in error.

*H. A. Johnson,* for defendants in error.

Opinion by ROBBERTS, C. The plaintiff in error is a state bank, organized under the laws of the State of Oklahoma. At the times of the transaction complained of herein the defendants in error J. P. Woolsey and W. W. Woolsey were respectively president and cashier of said bank. The defendant in error Ettie Michael, who was plaintiff below, bases her cause of action against the bank and said Woolseys on the alleged ground that on the 30th day of September, 1908, she was induced by said Woolseys, as such officers of said bank, to deposit with said bank the sum of $1,000, under the agreement that they would guarantee to her the payment of 10 per cent. per annum interest on said money, and that she deposited said sum of money with said bank upon the reliance of said promises; that, after receiving plaintiff's money, said bank, or its officers, loaned the same to a certain cotton and grain company, which was at the time, to the knowledge of said officers of the bank, insolvent, and was also largely indebted to the bank, and that said bank at the time of loaning the money to the cotton and grain company, without the knowledge of plaintiff, appropriated it to the payment of the debts of the cotton and grain company to the bank; that plaintiff had demanded payment from said bank, but the same was refused, and that said money was wholly lost to plaintiff unless she should recover the same from defendants. The defendants separately deny the allega-

tions of plaintiff's petition except that of the incorporation of the bank.

The court sustained demurrers to the plaintiff's evidence so far as it relates to the defendants Woolsey, and the case was submitted to the jury upon issues and evidence as to the bank. A verdict was returned in favor of plaintiff for $1,000, with interest at 10 per cent. per annum from September 30, 1908, to date of judgment, which was October 2, 1912. Upon calculation we find the amount of the judgment at that date to be $1,200. From this judgment the bank brings error.

The assignments of error presented in the brief are as follows:

"Fifth. That the court erred in overruling the objections of plaintiff in error to the competency of the witness, Mr. Michael, husband of the defendant in error, Ettie Michael, and to the competency of the testimony of said witness, to which plaintiff in error duly excepted.

"Sixth. That the court erred in overruling the demurrer of the plaintiff in error to the evidence of the defendant in error, Ettie Michael, to which plaintiff in error duly excepted."

"Eighth. That the court erred in sustaining the demurrer of defendants in error J. P. Woolsey and W. W. Woolsey to the evidence of the defendant in error Ettie Michael, and in directing a verdict for said defendants in error, to which plaintiff in error duly excepted.

"Ninth. That the court erred in overruling the motion of plaintiff in error to direct a verdict in its favor, to which plaintiff in error duly excepted.

"Tenth. That the court erred in giving instructions numbered 3, 4, and 5, to which plaintiff in error duly excepted, and which exceptions were duly allowed and signed by the judge of said court.

"Eleventh. That the court erred in rendering judgment against plaintiff in error on the verdict of the jury for the reason that the same was contrary to law and the evidence, to which plaintiff in error duly excepted.

"Twelfth. That the court erred in rendering judgment on the verdict of the jury for the reason that the same is not sustained by the evidence."

"Fifteenth. That the verdict of the jury is excessive.

"Sixteenth. That the court erred in overruling the motion of plaintiff in error for a new trial of said cause, to which plaintiff in error duly excepted."

The first contention of counsel goes to the sixth assignment, viz., that the court erred in overruling the demurrer of the defendant bank to the evidence of the plaintiff. This insistence cannot be sustained, for the reason that there was some evidence, and we agree with the trial court and jury, that there was sufficient evidence to support the verdict and judgment of the court upon the general allegations of the plaintiff's petition.

The eighth assignment is that the court erred in sustaining the demurrer to the evidence against the defendants Woolsey. We are free to say that, if the writer hereof had been passing upon that question, the ruling, as we look at it from this viewpoint, would have been different. As the case appears to us, there was ample evidence to support a verdict and judgment against these defendants. As we look at the evidence, their conduct was reprehensible, but the trial court was present, heard and saw the witnesses, and had a much better opportunity to pass upon the evidence than this court has. We cannot, and would not, undertake to say that his findings were not just and proper, and, besides, this court is pre-

cluded by the findings of the trial court upon questions of fact. Another cogent reason why the ruling of the court upon that question is conclusive is, that the defendants Woolsey are not made parties defendant in this appeal. The case-made was not served upon them within the time allowed by law, if ever, and the time was not extended for service upon them. The time was extended for service of same upon plaintiff Ettie Michael, but not as to defendants Woolsey. Passing that, we rest this assignment upon the fact that the trial court passed upon the sufficiency of the evidence, and under the rule we adopt his decision.

The ninth, eleventh, and twelfth assignments go to the sufficiency of the evidence, but we have heretofore passed upon that, and approved and adopted the findings of the trial court and jury. The contention of counsel that the interest only was guaranteed cannot be sustained. The evidence shows that at the solicitation of the president and cashier this money was sent to the bank. The bank received it and thereby became liable for it without any special guarantee.

The tenth assignment questions the correctness of instructions 3, 4, and 5, given by the court. In the first place, the record fails to show any objection or exceptions taken at the trial by counsel to instruction 3, and, of course, such objections cannot be considered at this time. The fourth instruction is favorable to the plaintiff in error, and necessarily it was not prejudiced thereby. It is as follows:

"4. Upon the other hand, gentlemen of the jury, you are instructed that if you believe from the evidence in this case that the $1,000 as claimed by the plaintiff

was turned over to the bank for the purpose of reloaning the same for the benefit of the plaintiff Ettie Michael, and there was no guarantee on the part of the bank to stand good for the loan and you do find from the evidence that the bank reloaned the money and the investment turned out to be unprofitable, in other words, the bank made a bad loan, and the plaintiff failed to recover in her suit, your verdict should be for the defendant and against the plaintiff."

The fifth assignment goes to the right and power of the officers of the bank to enter into a contract binding the corporation to pay interest at the rate of 10 per cent. per annum, on the deposit or loan of $1,000, and is as follows:

"5. You are instructed that the defendant bank, through its officers, had authority and power, under the laws of the State of Oklahoma, to enter into the contract with the plaintiff as claimed by her. The question for you to determine is, whether or not the contract was entered into."

There is no question but what the officers of the bank had the right and power to enter into a contract with plaintiff, wherein she agreed to deposit her money in their bank. The only question for consideration is, whether the president and cashier of a bank, organized under the laws of this state, can, without the approval of the board of directors, agree to pay, or guarantee to a depositor, or other customer, interest on deposits at the rate of 10 per cent. per annum. Section 262, Rev. Laws 1910, is as follows:

"The affairs and business of any banking association organized under the laws of this state shall be managed or controlled by a board of directors of not less than three or more than thirteen in number, who shall be se-

lected from the stockholders, at such time and in such manner as may be provided by the by-laws of the association."

We are not herein questioning the power of the president and cashier to agree to pay a reasonable rate of interest on deposits, but are of the opinion, and therefore hold, that it would be against public policy for such officers to agree to pay the full legal rate of interest on deposits, or even to guarantee that rate for money left with it in any way.    Section 259 of the banking laws of Oklahoma is as follows:

"A banking corporation organized under the provisions of this chapter shall be permitted to receive money on deposit not to exceed ten times the amount of its paid-up capital and surplus, deposits of other banks not included, and to pay interest thereon not to exceed the rate that may from time to time be fixed by the Bank Commissioner, as the maximum rate that may be paid upon deposits by banks in this state."

And section 267, same statute, is as follows:

"Every bank doing business under the laws of this state shall have on hand at all times in available funds the following sums, to-wit:    Banks located in towns or cities having a population of less than twenty-five hundred persons, an amount equal to twenty per cent. of their entire deposits; banks located in cities having over twenty-five hundred population, an amount equal to twenty-five per cent. of their entire deposits, two-thirds of which amounts may consist of balances due to them from good, solvent banks, selected from time to time with the approval of the Bank Commissioner, and one-third shall consist of actual cash."

The court will take judicial notice of the fact that the town of Morrison, the location of the bank involved,

has a population of less than 2,500, and therefore this bank would be required to keep on hand at least 20 per cent. of its deposits. If a bank had the legal right to pay 10 per cent. on part of its deposits, it follows that it could pay the same rate of interest on all deposits. It does not require argument, nor a further statement, to show the dilemma to which this practice would lead. Such a policy would certainly impair the security benefits of the depositor's guaranty fund, and for that reason alone it would be contrary to public policy.

Counsel claim that the rate fixed by the Bank Commissioner is 4 per cent., but there seems to be no proof of that fact. It is sufficient in this case to say that it is against the policy of this state for the president and cashier, without the approval of the board of directors, to agree to pay or guarantee 10 per cent., and for that reason the instruction was erroneous to that extent; but this does not necessarily require a reversal of the case, as the error can be corrected by a modification of the judgment in that particular. The rule of this court is that:

"When an error has been committed upon the trial of a case, it is the duty of this court upon an inspection of the entire record to determine whether or not the defendant suffered any material injury from such error. Unless such injury appears, the error will not be ground for reversal. *Hooper v. State,* 7 Okla. Cr. 73, 121 Pac. 1087."

The fifteenth assignment, that the verdict of the jury is excessive, is disposed of in the preceding paragraph, and the judgment of the trial court will be modified as hereinafter indicated.

The sixteenth assignment, that the court erred in overruling the motion for new trial, is fully disposed of herein, and cannot be sustained. Nor is there any merit in the claim that the cause of action was barred by the statutes of limitation.

The contention of counsel for plaintiff in error that the defendant bank occupied the position of a gratuitous bailee, is not tenable. The law of bailments, as sought to be enforced by counsel, has no application in this case. Upon examination of the whole case, it is apparent that the judgment of the lower court is right upon the merits, and therefore the judgment should be affirmed in all respects, except as to the allowance of interest at the rate of 10 per cent. As hereinbefore stated, we are of the opinion that such contract is against the general policy of the laws of this state, and because thereof the judgment should be modified in this, that the plaintiff be allowed interest on $1,000 at the rate of 4 per cent. from the 30th day of September, 1908, to the date of the judgment, which was October 2, 1910, making a total judgment of $1,080, with costs, and that said judgment draw interest thereafter at the rate of 6 per cent. per annum.

By the Court: It is so ordered.